UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

---

JACK VALLE,

    Plaintiff,

    v.

VALLEY FORGE INSURANCE COMPANY, doing business as CNA INSURANCE, and DOES 1 through 20, inclusive,

    Defendant.

No. 17-cv-01048 MCE CKD

**MEMORANDUM AND ORDER**

---

Plaintiff Jack Valle ("Plaintiff") seeks in this action to recover damages from Defendant Valley Forge Insurance Company ("Defendant") for breach of an insurance contract and breach of the covenant of good faith and fair dealing. Presently before the Court is Defendant's Motion for Summary Judgment, ECF No. 11, in which Defendant argues Plaintiff already released Defendant of these and other claims when the parties executed an earlier settlement agreement. For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED.[1]

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. See ECF No. 12; E.D. Cal. Local Rule 230.

1

# BACKGROUND[2]

On October 15, 2010, Plaintiff was driving a company vehicle during the scope of his employment when he was struck by another driver. At the time of the accident, Defendant insured Plaintiff's employer, and the insurance policy included a provision for underinsured motorist ("UIM") coverage. Because Plaintiff's damages exceeded the underinsured driver's coverage, Plaintiff pursued UIM benefits from Defendant under his employer's insurance policy.

The parties went to arbitration over Defendant's obligations. After a time, Plaintiff's counsel, Mr. Michael Loewen, had an Offer to Compromise served on Defendant's counsel, Mr. Tracy Goldberg, pursuant to California Code of Civil Procedure § 998. Mr. Goldberg emailed Mr. Loewen that Defendant would accept the offer. Mr. Goldberg then sent a draft release of liability to Mr. Loewen, who rejected it. Mr. Loewen drafted a different release and sent it to Mr. Goldberg, who made a few modifications not relevant to the instant matter. The parties executed the document, titled "Release of All Claims" (the "Release"), on October 4, 2016. Defendant paid the settlement amount that same day. Mr. Goldberg, in a communication referencing the UIM claim number, wrote to Mr. Loewen: "Enclosed is our principal's draft in the sum of $699,999.00 in settlement of the above entitled case." Attachments[3] at 13, ECF No. 14-2.

The Release reads, in pertinent part:

> [Plaintiff] hereby release (sic) and discharge (sic) [Defendant] . . . of and from any and all claims, actions of (sic) causes of action known or unknown, which [Plaintiff] now have (sic) or may hereafter have on account of or arising out of [the] motor vehicle collision with an uninsured motorist which occurred on or about October 5, 2010, in the County of Solano, State of California, involving a vehicle driven by an

---

[2] The following facts are derived from the parties' respective briefing, statements of disputed and undisputed facts, and Plaintiff's Complaint. They are construed in Plaintiff's favor as the party opposing summary judgment.

[3] Plaintiff did not provide a unified title for the attachments in ECF No. 14-2, but together they form an evidentiary packet in support of Plaintiff's opposition to the motion for summary judgment.

2

> underinsured motorist and a vehicle driven by [Plaintiff] on east bound I-80 in Solano County, resulting in alleged general and special damages, including, but not limited to, personal injuries, medical expenses, future medical expenses, loss of income, loss of earning capacity, property damage, loss of use of property, and pain and suffering.
>
> It is understood and agreed that this is a full and final release applying to all unknown and unanticipated injuries, deaths, losses or damages arising out of said incident or accident, as well as to those now known or disclosed. [Plaintiff] waives all rights or benefits which the [Plaintiff] now have (sic) or in the future may have under the terms of section 1542 of the Civil Code of the State of California, which section reads as follows:
>
>> <u>Certain claims not affected by general release</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.
>
> . . . .
>
> Counsel for all of the parties acknowledge and approve this agreement as to form and content. The parties have been advised by their respective counsel as to the contents thereof, and sign the same freely.
>
> This release contains the entire agreement between the parties hereto. The terms of this release are contractual and not a mere recital. This release is executed without reliance on any representation by any person concerning the nature or extent of injuries, damages or legal liability therefore, and the [Plaintiff] have (sic) carefully read and understands the contents of this release and signs the same as my own free act.

Evidentiary Packet in Supp. of Mot. for Summ. J. 55–57 ("Release of All Claims"), ECF No. 11-2.

Two weeks after the parties executed the Release, Mr. Loewen contacted Mr. Goldberg about a potential claim for bad faith against Defendant. In response, Mr. Goldberg indicated he was not the person to speak with about that matter. He later directed Mr. Loewen to another point of contact.

Approximately five months after the parties executed the Release, Plaintiff filed the instant action in Sacramento County Superior Court for breach of contract and

breach of the covenant of good faith and fair dealing, arguing that Defendant wrongfully and unreasonably delayed the processing, investigation, and evaluation of Plaintiff's claims and refused to timely pay benefits under the UIM policy. Defendant removed the action to this Court citing diversity jurisdiction, 28 U.S.C. § 1441, and filed an answer in which it asserted, as its second affirmative defense, that the parties had already settled these claims in the Release. The instant motion for summary judgment seeks to vindicate that defense.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In a summary judgment motion, the moving party always bears the initial responsibility of informing the Court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] . . . declarations[,] . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

4

might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The inquiry is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

As set forth below, California law governs the Court's interpretation of the Release, Defendant has demonstrated the Release's clear and explicit language bars the current suit, and the Release's language is not reasonably susceptible to the alternative reading advanced by Plaintiff.

**A.     California Law Governs the Release's Interpretation**

The Court applies California law when hearing a case in diversity originating from rights created by California, see Erie R. Co. v. Tompkins, 304 U.S. 64, 79 (1938), and

this includes California's choice of law provisions, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). In California, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed." Cal. Civ. Code § 1646. The parties agree California law is to be used to interpret the Release and, thus, to determine whether its terms bar the present action. See Mot. for Summ. J. 7:28–8:1, ECF No. 11 (stating so explicitly); Opp'n to Mot. for Summ. J. 1:18–3:21, ECF No. 14-3 (applying California law to interpret the Release).

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. To ascertain the parties' intentions, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit." Cal. Civ. Code § 1638. However, in determining whether language is clear and explicit, the Court is not limited "to [a contract's] four-corners." Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968). "[A]mbiguity may be exposed by extrinsic evidence that reveals more than one possible meaning." Id. at 40 n. 8. But "the mere existence of extrinsic evidence supporting an alternative meaning does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to the non-movant's proffered interpretation." Barris Indus., Inc. v. Worldvision Enterprises, Inc., 875 F.2d 1446, 1450 (9th Cir. 1989); see also Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 75 (2009) (affirming summary judgment where "[t]he contractual language [was] not reasonably susceptible to [the non-movant]'s interpretation.").

**B. Defendant Has Met its Initial Burden of Demonstrating the Absence of a Genuine Issue of Material Fact, and the Burden Shifts to Plaintiff**

Defendant argues the Release is clear and that the language bars the present suit: "Plaintiff released [Defendant] 'of and from any and all claims, actions of [sic] causes of action known or unknown, which [Plaintiff] now have or may hereafter have on account of or arising out of [the] motor vehicle collision . . . .'" Mot. for Summ. J. 8:22–25

6

(quoting Release of All Claims 1) (second and fourth alterations in original). Defendant argues California law is clear that the term "arising out of" is broad, and that Plaintiff's causes of action arise out of the vehicle collision. Id. at 9:14–10:23. "'Arising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with.'" Fibreboard Corp. v. Hartford Accident & Indem. Co., 16 Cal. App. 4th 492, 504 (1993) (quoting Cont'l Casualty Co. v. City of Richmond, 763 F.2d 1076, 1080 (9th Cir. 1985)) (internal quotation marks omitted); see also Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins., 106 Cal. App. 4th 293, 301 (2003) (remarking that "arising out of" requires only a "slight connection" or "incidental relationship").

Defendant relies most heavily on Edwards v. Comstock Insurance Company, 205 Cal. App. 3d 1164 (1988). See Mot. for Summ. J. 10:13–13:1. In Edwards:

> [T]he [plaintiffs]—before instituting their "bad faith" action—had accepted settlement payments of $5,000 and $6,750. In connection with this transaction, both [the plaintiffs] had signed documents entitled "Release of All Claims" in which they agreed to release [the defendants] "from any and all rights, claims, demands, actions, causes of action and damages of whatever kind whatsoever including general, special, compensatory and punitive damages known or unknown, whether in contract, tort or otherwise resulting from the loss sustained by the [plaintiffs] which occurred on or about May 2, 1984 at or near Los Angeles County, California."

205 Cal. App. 3d at 1166. The Edwards trial court granted the defendants' motion for summary judgment on the grounds that the release extended to the bad faith claims and that the plaintiffs' undisclosed intention to preserve certain claims was irrelevant. Id. A division of the California Court of Appeal affirmed the trial court, concluding: "The only reasonable meaning of the release in this case is that it encompasses the [plaintiffs'] presettlement claims of bad faith and unfair practice as well as their presettlement claims for damages resulting from the automobile accident." Id. at 1169.

///

Defendant has carried his initial burden of demonstrating the absence of a genuine issue of material fact. The language of the Release is clear on its face and the present claims arise out of the motor vehicle accident. The burden now shifts to Plaintiff who, to avoid summary judgment, must show that a genuine issue as to any material fact does exist.

### C. The Release is Not Reasonably Susceptible to Plaintiff's Interpretation, Even in Light of His Proffered Extrinsic Evidence

Plaintiff argues the language of the Release clearly establishes he did not include the claims asserted in this action, Opp'n to Mot. for Summ. J. 3:22–8:13, or, if the Court disagrees, that the Release is reasonably susceptible to his reading in light of extrinsic evidence, id. at 8:14–11:14. Both lines of argument are unpersuasive.

#### 1. Plaintiff's Argument that the Release Language Clearly Excludes His Current Claims Lacks Merit

Plaintiff focuses on different aspects of the Release to argue it clearly applies only to personal injury and attendant liabilities:

> [Plaintiff] hereby release (sic) and discharge (sic) [Defendant] . . . of and from any and all claims . . . arising out of [the] motor vehicle collision with an uninsured motorist which occurred on or about October 5, 2010 . . . resulting in alleged general and special damages, including, but not limited to, personal injuries, medical expenses, future medical expenses, loss of income, loss of earning capacity, property damage, loss of use of property, and pain and suffering.
>
> It is understood and agreed that this is a full and final release applying to all unknown and unanticipated injuries, deaths, losses or damages arising out of said incident or accident, as well as to those now known or disclosed. . . .

Opp'n to Mot. for Summ. J. 3:24–4:9 (quoting Release of All Claims 1). Plaintiff argues this language limits its terms to the accident and only encompasses damages closely related to the underlying personal injury. See id. at 5:19–27. Plaintiff further argues that the release language in Edwards is much broader. See id. at 6:3–10.

The release in Edwards encompassed "any and all rights, claims, demands, actions, causes of action and damages of whatever kind whatsoever including general,

1  special, compensatory and punitive damages known or unknown, whether in contract,
2  tort or otherwise resulting from the loss sustained by the [plaintiffs] which occurred on or
3  about May 2, 1984 . . . ." 205 Cal. App. 3d at 1166.  Here, the similarities in the releases
4  are more important than the differences.  Both broadly release the defendants from
5  liability springing from an accident on a particular date.  As Defendant argues: "The fact
6  that the Release Agreement adds detail to what happened at the time and place of the
7  loss is irrelevant.  The release language is not limited to UIM 'personal injury' damages
8  . . . .  The release language broadly releases and discharges [Defendant] of and from all
9  claims arising from the car accident."  Reply in Supp. of Mot. for Summ. J. 3:10–14, ECF
10 No. 15.  The release of "any and all claims" is not limited by the later enumerated list of
11 what the accident "result[ed] in."  Release of All Claims 1.  Plaintiff's reading is both
12 grammatically tortured and unpersuasive.  The breadth of the Release is made even
13 clearer in the second paragraph, where it states it "appl[ies] to <u>all</u> . . . injuries, deaths,
14 <u>losses or damages</u> arising out of said incident or accident."  Id. (emphasis added).

15       Further, contrary to Plaintiff's arguments, Opp'n to Mot. for Summ. J. 6:15–7:14
16 (citing <u>Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.</u>, 42 Cal. App. 4th
17 121 (1996); <u>Charles E. Thomas Co. v. Transamerica Ins. Grp.</u>, 62 Cal. App. 4th 379
18 (1998)), the term "arising out of" includes even far-flung connected events—including
19 those at issue in this case.  Defendant is right when it argues that Plaintiff's citations hurt
20 rather than help him.  See Reply in Supp. of Mot. for Summ. J. 4:24–5:28.  <u>Century</u>
21 <u>Transit System</u> stands for the proposition that "'arising out of' . . . is a broad concept
22 requiring only a 'slight connection' or an 'incidental relationship' between the injury and
23 the excluded risk," and that in the context of policy coverage exclusion, courts are to look
24 to underlying conduct rather than legal labels.  42 Cal. App. 4th at 127 n. 4.  In <u>Charles</u>
25 <u>E. Thomas</u>, the court considered a policy exclusion for "loss, cost or expense arising out
26 of any . . . request, demand or order that any insured . . . clean up . . . pollutants," and
27 held that the term "arising out of" modified the words "request, demand or order" rather
28 ///

than the escape of pollutants. 62 Cal. App. 4th at 383. This too is not a case limiting the scope of the term "arising out of."

The Release's language is not amenable to Plaintiff's interpretation.

### 2. Plaintiff's Extrinsic Evidence Fails to Render the Release Reasonably Susceptible to His Reading

Plaintiff first argues the Offer to Compromise pursuant to California Code of Civil Procedure § 998 and Mr. Goldberg's response that Defendant would accept the "offer of $699,999 to settle the UIM claim," show that the resulting contract, the Release, was solely a compromise of those claims. Opp'n to Mot. for Summ. J. 9:6–21. Plaintiff argues that Mr. Goldberg's later communication, after the parties executed the Release, explaining that he was transmitting payment "in settlement of the above entitled case," further supports his reading of the Release. Id. at 9:25–27. Finally, Plaintiff argues that Mr. Goldberg's response to Mr. Loewen two weeks after the parties executed the release that he was not the person to speak with about a potential claim for bad faith shows Mr. Goldberg did not have authority to settle the bad faith claim or did not intend to do so. Id. at 10:13–20.[4]

The Release is not susceptible to Plaintiff's reading even after considering his extrinsic evidence. Looking to the evidence in the light most favorable to Plaintiff, he would have the Court draw an inference that Mr. Goldberg's behavior after the Release was executed amounted to an admission that he did not or could not have settled the claims at issue here. But looking to this behavior is not illuminating. Cf. Barris Indus., Inc. v. Worldvision Enterprises, Inc., 875 F.2d 1446, 1450 (9th Cir. 1989) ("Post-contract constructions by the parties themselves may be considered only when the acts of the

///

---

[4] Plaintiff also argues he and his client did not subjectively intend to settle claims outside the scope of personal injury, but this is irrelevant. See, e.g., Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal. App. 4th 944, 956 (2003) ("The parties' undisclosed intent or understanding is irrelevant to contract interpretation."); Winet v. Price, 4 Cal. App. 4th 1159, 1167 (1992) ("Winet does not suggest that he ever communicated to Price or his attorney his intent to retain the right to sue Price in the future.").

parties were positive and deliberate and done in attempted compliance with the terms of the agreement.").

The evidence that the Release came about against the backdrop of a UIM claim and that Mr. Goldberg referenced that claim in paying the settlement amount is likewise not sufficient to change the grammatical structure of the Release or the expansive meaning of "arising out of." The Release is not reasonably susceptible to Plaintiff's interpretation. As such, Plaintiff has failed to show there is a fact in contention which is material to the dispute at issue. Because the Release precludes the present action, summary judgment in Defendant's favor is appropriate.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 11, is GRANTED.

IT IS SO ORDERED.

Dated: June 28, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE